# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

**WORCESTER DIVISION**                                      C.A. No. 4:09-cv-40041

**SAMUEL CHENG,**
                Plaintiff

vs.

**SUNOCO, INC. (R&M),**
                Defendant

## STATEMENT OF UNDISPUTED MATERIAL FACTS
## IN SUPPORT OF MOTION OF DEFENDANT/COUNTERCLAIMANT
## SUNOCO, INC. (R&M) FOR SUMMARY JUDGMENT

Defendant/Counterclaimant Sunoco, Inc. (R&M) (hereinafter "Sunoco") submits the following Statement of Undisputed Material Facts pursuant to Local Rule 56.1[1] in support of his Motion for Summary Judgment against Plaintiff Samuel Cheng (hereinafter "Mr. Cheng"):

1. Defendant/Counterclaimant Sunoco is a business corporation organized and existing pursuant to the laws of the Commonwealth of Pennsylvania, having its principal place of business at Philadelphia, Pennsylvania. **First Amended Counterclaim, ¶ 1 (Document No. 31).**

2. Sunoco has at all times mentioned herein been authorized to transact business in the Commonwealth of Massachusetts, including the sale of petroleum products to franchised

---

[1] Sunoco asserts that following facts are undisputed <u>only</u> for the purposes of this summary judgment motion.

dealers for resale to the motoring public. **First Amended Counterclaim, ¶ 1 (Document No. 31).**

3. Plaintiff Samuel Cheng is an individual residing in Worcester, Massachusetts. **First Amended Counterclaim, ¶ 2 (Document No. 31).**

4. Mr. Cheng owned a share of a Sunoco gas station in Worcester, Massachusetts (hereinafter "the Worcester Station") from sometime in 1998 until sometime in 2002. **Exhibit A, Mr. Cheng's Deposition, p. 15:16 – 22**.

5. Mr. Cheng eventually transferred his share of the Worcester Station to his brother due to a partnership dispute. **Exhibit A, Mr. Cheng's Deposition, p. 16:6-15.**

6. Mr. Cheng was involved with the day-to-day operations of the Worcester Station during the period of time he owned a share in the station. **Exhibit A, Mr. Cheng's Deposition, p. 17:9-11**.

7. Mr. Cheng was involved with the gasoline deliveries at the Worcester Station during the period of time he owned a share in the station. **Exhibit A, Mr. Cheng's Deposition, p. 17:14-16**.

8. Sometime in 2004, Mr. Cheng contacted Judy Wallace – then the Divisional Marketing Manager for Sunoco – and ask if she knew of an opportunity for a franchise in the area. **Exhibit B, Cited Portions of Judy Wallace's Deposition [hereinafter "Ms. Wallace's Deposition"], p. 21:4-20**.

9. In 2004, Mr. Cheng was approved for another Sunoco franchise in Natick, Massachusetts (hereinafter referred to as the "Natick Franchise"). **Exhibit A, Mr. Cheng's Deposition, p. 30:18-23**

10. Mr. Cheng did not speak with a business adviser about obtaining the Natick Franchise. **Exhibit A, Mr. Cheng's Deposition, p. 19:14-16.**

11. Mr. Cheng did not speak to an accountant prior to obtaining the Natick Franchise. **Exhibit A, Mr. Cheng's Deposition, p. 19:19-24**.

12. Mr. Cheng completed an application (hereinafter "the Application") prior to obtaining the Natick Franchise. **Exhibit C, Application**.

13. The Application included submitting financial data regarding Mr. Cheng's liabilities and assets. **Exhibit C, Application, pg. 1**.

14. The Application included submitting information regarding Mr. Cheng's Monthly Personal Income Requirement. **Exhibit C, Application, pg. 3**.

15. The Application included submitting information regarding Mr. Cheng's Monthly Income. **Exhibit C, Application, pg. 3**.

16. Mr. Cheng represented in his Application that he was earning $2000 in monthly income from "Southwest Cutoff." **Exhibit C, Application, pg. 3**.

17. "Southwest Cutoff" referred to the Worcester Station. **Exhibit A, Mr. Cheng's Deposition, p. 28:11-15.**

18. Mr. Cheng never "physically" received the money from the Worcester Station at the time he made this representation in the Application. **Exhibit A, Mr. Cheng's Deposition, p. 64:6-9; p. 64:24-25, p. 65:14-16** (testifying that he never "saw" the money from the Worcester Station).

19. Mr. Cheng testified that he listed this $2000 under the "Monthly Income" section of the Application "to make the income look better." **Exhibit A, Mr. Cheng's Deposition, p. 65:1-2**.

20. Mr. Cheng signed and dated the Application. **Exhibit C, Application, p. 3**.

21. The signature block directly above Mr. Cheng's signature provided the following:

> I submit the preceding information as my complete and true personal and financial condition as of the date shown below. I agree to supply statements from my professional advisors (e.g. banker or broker) verifying assets upon request, and agree to furnish copies of Income Tax Returns as filed for the last two (2) years. I understand that Sunoco is relying upon all the above information as a material factor in considering my application to become a Sunoco Franchisee, and I therefore agree to promptly notify Company of any material change in any of the above information or any subsequent information provided to Company. I understand completing this application does not obligate me or Company in any way. **Exhibit C, Application, p. 3**.

22. Due to some financial issues, Sunoco required Mr. Cheng to provide additional security prior to obtaining the franchise. **Exhibit B, Ms. Wallace's Deposition, p. 24:7-18.**

23. The additional security was likely based on something which was uncovered in Mr. Cheng's credit report. **Exhibit B, Ms. Wallace's Deposition, p. 24:7-18**.

24. Mr. Cheng's financial documents which he provided to Sunoco were satisfactorily reviewed by the credit department. **Exhibit B, Ms. Wallace's Deposition, p. 22:8-13**.

25. Sunoco's credit department moved Mr. Cheng into the Natick Station based in reliance upon the financial condition presented by Mr. Cheng. **Exhibit B, Ms. Wallace's Deposition, p. 22:16-18**.

26. After Mr. Cheng had begun operating the Natick Station, Ms. Wallace was informed by Mr. Cheng that he was paying $900 for his residential rent each month. **Exhibit B, p. 46:2-47:17**.

27. Mr. Cheng did not disclose his $900 monthly residential rental expense on the Application. **Exhibit C, Application, p. 3**.

28. After Mr. Cheng had begun operating the Natick Station, Ms. Wallace was informed by Mr. Cheng that he was making payments to his monthly payments to his in-laws in the amount of $3,000.  **Exhibit B, p. 46:2-47:17**.

29. Mr. Cheng did not disclose this $3,000 in monthly payments on the Application, although he was required to do so by the terms of the Application.  **Exhibit C, Application, p. 3**.

                        Defendant/Counterclaimant,
                        SUNOCO, INC. (R&M)
                        By its Attorneys,


                        ___/s/ Michael E. Levinson_____
                        John B. Reilly, Esq. (BBO#545576)
                        Michael E. Levinson, Esq. (BBO#666108)
                        John Reilly & Associates
                        100 North Main Street, 4th Fl.
                        Providence, RI 02903
                        Tel:     (401) 272-2800
                        Fax:    (401) 272-2811
                        mlevinson@lawyers-online.us

## CERTIFICATION

It is hereby certified that on the **30th** day of **July, 2010**, a true copy of the within was filed electronically and it is available for viewing and downloading from the ECF system. The following counsel of record will receive notice of the filing of this document electronically from the United States District Court for the District of Massachusetts:

**Nathaniel D. Pitnof, Esq.**
100 Grove Street, Suite 311
Worcester, Massachusetts 01605

                                                   /s/ Michael E. Levinson, Esq.
                                                      Michael E. Levinson, Esq.