## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

**WORCESTER DIVISION**                          C.A. No. 4:09-cv-40041

| |
|---|
| **SAMUEL CHENG,** |
| Plaintiff |
| |
| **v.** |
| |
| **SUNOCO, INC. (R&M)** |
| Defendant |

## JOINT PRETRIAL MEMORANDUM

## I.  SUMMARY OF THE EVIDENCE TO BE OFFERED AT TRIAL

### A)  Plaintiff's Evidence

Samuel Cheng (hereinafter "Mr. Cheng") applied for and was granted by Sunoco, Inc.

(R&M) (hereinafter "Sunoco") the franchise for a  retail gasoline station on Route 9 in Natick,

MA.  He had submitted a financial application and was told by Sunoco's Divisional Marketing

Manager Judy Wallace (hereinafter "Ms. Wallace") that he had to strengthen his application.

There was discussion back and forth about a former Sunoco station that he and his brother ran.

Cheng had left the station but said he had never been paid for his share and he felt he was owed

payments of $2,000 a month on a continuing basis for his payout. Wallace told him to list that

additional $2,000 per month as income.   He was granted the station franchise, and ran it

efficiently and profitably for some 4 months.  At that time Sunoco unilaterally and without notice

or right to do so changed the payment terms for gasoline delivery.  Sunoco debited two gasoline

loads within approximately 24 hours, overdrawing Cheng's bank account.  This sent him into a

financial spiral that he never recovered from and as importantly, caused Sunoco to refuse to deliver gasoline products.  Some three months or so later he closed the station, losing his entire investment and incurring an additional debt for the station rental that he had not been able to pay once he entered the status of a gas station with no gas.

### B)  Defendant's Evidence

With respect to the claim(s) made by Mr. Cheng, Sunoco will offer evidence that it did not engage in any "unfair and deceptive" conduct or breach its "covenant of god [sic] faith and fair dealing" as alleged in the Complaint in this matter.  First, the evidence will show that Mr. Cheng previously owned a share in another Sunoco petroleum marketing premises (hereinafter, "gasoline station"), had attended dealer training programs, and was fully aware of payment and credit terms associated with the operation of such a station.

The evidence will also show that Sunoco had valid grounds to terminate the Franchise Agreement between the parties (hereinafter "the Agreement") pursuant to the Petroleum Marketing Practices Act (hereinafter "PMPA"), 15 U.S.C. 2801 et seq. because:

(a)  Mr. Cheng failed to comply with the provision of the Agreement, which was both reasonable and of material significance to the franchise relationship;

(b)  Mr. Cheng failed to exert good faith efforts to carry out the provision of the Agreement;

(c)  Mr. Cheng failed to pay Sunoco in a timely manner all sums it was owed and was legally entitled to; and

(d)  Mr. Cheng failed to operate the marketing premises for seven (7) consecutive days.

The evidence will also show that the Agreement allowed Sunoco to change the terms of payment for petroleum products sold to the franchisee with notice to the franchisee.  This Oral

notice of a change in terms was provided to Mr. Cheng's wife, who assisted Mr. Cheng in the daily operations of the business.

The evidence will also show that Mr. Cheng deliberately and falsely misrepresented (overstated) his financial condition during the application process.   This included (a) false statements as to how much "income" he was earning each month; and (b) false statements about his debt obligations.   In doing so, he certified that the information on the application was his "complete and true personal financial condition."   These representations were material and induced Sunoco to enter into the Agreement.

Accordingly, Sunoco expects that the preponderance of evidence will show that the Agreement should be voided *ab initio* due to Mr. Cheng's intentionally false misrepresentation and material misrepresentations.   Should this conclusion be reached, the issue of whether notice of a change in terms was oral or written should be immaterial.   On the other hand, Mr. Cheng's material misrepresentations about his true financial condition seem to have inevitably led to the financial problems (*i.e.* the inability to timely meet his obligations) that caused his credit terms to be changed.

Finally, Sunoco expects the evidence to show that Mr. Cheng did not initiate the instant lawsuit with one (1) year of termination of the franchise and, thus, is barred from maintaining such a lawsuit.

## II. STIPULATION OF FACTS

1) Defendant/Counterclaimant Sunoco is a business corporation organized and existing pursuant to the laws of the Commonwealth of Pennsylvania, having its principal place of business at Philadelphia, Pennsylvania.  **First Amended Counterclaim, ¶ 1 (Document No. 31).**

2) Sunoco has at all times mentioned herein been authorized to transact business in the Commonwealth of Massachusetts, including the sale of petroleum products to franchised dealers for resale to the motoring public.  **First Amended Counterclaim, ¶ 1 (Document No. 31).**

3) Plaintiff Samuel Cheng is an individual residing in Worcester, Massachusetts.  **First Amended Counterclaim, ¶ 2 (Document No. 31).**

4) Mr. Cheng owned a share of a Sunoco gasoline station in Worcester, Massachusetts (hereinafter "the Worcester Station") from sometime in 1998 until sometime in 2002.  **Mr. Cheng's Deposition, p. 15:16 – 22**.

5) Mr. Cheng eventually transferred his share of the Worcester Station to his brother due to a partnership dispute.  **Mr. Cheng's Deposition, p. 16:6-15.**

6) Mr. Cheng was involved with the day-to-day operations of the Worcester Station during the period of time he owned a share in the station.  **Mr. Cheng's Deposition, p. 17:9-11**.

7) Mr. Cheng was involved with the gasoline deliveries at the Worcester Station during the period of time he owned a share in the station.  **Mr. Cheng's Deposition, p. 17:14-16**.

8) Sometime in 2004, Mr. Cheng contacted Judy Wallace – then the Divisional Marketing Manager for Sunoco – and asked if she knew of an opportunity for a franchise in the area.

**Cited Portions of Judy Wallace's Deposition [hereinafter "Ms. Wallace's Deposition"], p. 21:4-20**.

9) In 2004, Mr. Cheng was approved for another Sunoco franchise in Natick, Massachusetts (hereinafter referred to as the "Natick Franchise"). **Mr. Cheng's Deposition, p. 30:18-23**

10) Mr. Cheng did not speak with a business adviser about obtaining the Natick Franchise. **Mr. Cheng's Deposition, p. 19:14-16.**

11) Mr. Cheng did not speak to an accountant prior to obtaining the Natick Franchise. **Mr. Cheng's Deposition, p. 19:19-24**.

12) Mr. Cheng completed an application (hereinafter "the Application") prior to obtaining the Natick Franchise. **Application**.

13) The Application required the submission of financial information regarding Mr. Cheng's liabilities and assets. **Application, pg. 1**.

14) The Application required the submission of information regarding Mr. Cheng's monthly personal income. **Application, pg. 3**.

15) The Application required the submission of information regarding Mr. Cheng's monthly income. **Application, pg. 3**.

16) Mr. Cheng represented in his Application that he was earning $2000 monthly from "Southwest Cutoff." **Application, pg. 3**.

17) "Southwest Cutoff" referred to the Worcester Station. **Mr. Cheng's Deposition, p. 28:11-15.**

18) Mr. Cheng did not receive money from the Worcester Station at the time he made this representation in the Application. **Mr. Cheng's Deposition, p. 64:6-9; p. 64:24-25, p. 65:14-16**.

19) Mr. Cheng listed this $2000 under the "Monthly Income" section of the Application "to make the income look better." **Mr. Cheng's Deposition, p. 65:1-2**.

20) Mr. Cheng signed and dated the Application. **Application, p. 3**.

21) The signature block directly above Mr. Cheng's signature provided the following:

> I submit the preceding information as my complete and true personal and financial condition as of the date shown below. I agree to supply statements from my professional advisors (e.g. banker or broker) verifying assets upon request, and agree to furnish copies of Income Tax Returns as filed for the last two (2) years. I understand that Sunoco is relying upon all the above information as a material factor in considering my application to become a Sunoco Franchisee, and I therefore agree to promptly notify Company of any material change in any of the above information or any subsequent information provided to Company. I understand completing this application does not obligate me or Company in any way. **Application, p. 3**.

22) The financial documents Mr. Cheng provided to Sunoco were reviewed by Sunoco's credit department to the best of its ability. **Ms. Wallace's Deposition, p. 22:8-13**.

23) Sunoco obtained a Judgment for possession and back-owed rent in *Sunoco, Inc. (R&M) v. Samuel Cheng*, Natick District Court Docket No. 200587SU000028 in the amount of $22,060.76 which, with interest, now exceeds $37,000.00. **Execution on Money Judgment.**

## III. CONTESTED ISSUES OF FACT

### A) Sunoco's Position on Contested Facts

1) Sunoco had a right to change the payment terms for gasoline deliveries pursuant to the plain language of the Agreement.

2) Sunoco provided proper notice to Mr. Cheng about the change in payment terms through a telephone call to his wife, Chin Cheng, that informed her (as an acting

agent of the gasoline station) about the changed terms (*i.e.* that payment would be due two (2) days after a gasoline delivery as opposed to ten (10) days after a gasoline delivery, which was the payment schedule Mr. Cheng was inadvertently placed on).

3) In spite of the verbal notice provided to Mr. Cheng, his financial condition was such that he would not have been able to continue operating the gasoline station.

4) Mr. Cheng intentionally misrepresented his financial condition in his application.

5) Mr. Cheng was not receiving the $2,000 from "Southwest Cutoff" as he claimed on his franchise application.

6) Sunoco relied upon Mr. Cheng's application when it granted him a franchise and that the $2,000 of falsely reported monthly income was essential to approval.

7) Sunoco has been harmed as a result of the misrepresentations made by Mr. Cheng in the franchise application.

## B)  Mr. Cheng's Position on Contested Facts

1. The change in payment terms was done without notice to Cheng and therefore was not done as a matter of right, and the changed breached the contract.

2. The ten day payment terms were a course of dealing between the parties and Cheng relied on this means of payment.

3. Cheng was running the station profitably and would have continued to do so but for the unilateral change in payment terms by Sunoco.

4.  Cheng's financial statement, modified to include the Southwest Cutoff $2,000 monthly figure was, was done at the behest, suggestion and with full knowledge of

the circumstances of the $2,000 by Judy Wallace who was acting on behalf of Sunoco.

## IV. JURISDICTIONAL QUESTIONS

None known.

## V. ISSUES RAISED BY PENDING MOTIONS

None known.

## VI. ISSUES OF LAW

### 1) Whether Sunoco's termination of the Agreement was consistent with the requirements of the PMPA?

#### a. Sunoco's Position

The PMPA provides that a franchisor may terminate a franchise agreement if there is an occurrence of "an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable." *See* 15 U.S.C. § 2802(b)(2)(c).  The PMPA provides further that such an event may include (a) a failure by the franchisee to pay to the franchisor in a timely manner all sums to which the franchisor is legally entitled; and (b) a failure by the franchisee to operate the gasoline station for a period of seven (7) consecutive days.  *See* 15 U.S.C. § 2802(c)(8) – (9).

In the instant case, Mr. Cheng both failed to provide Sunoco with sums owed pursuant to the Agreement (*i.e.* sums which Sunoco was "legally entitled") and failed to operate the gasoline station for a period of seven (7) consecutive days.   In that regard, Mr. Cheng's conduct

constituted an event which was relevant to the franchise relationship and the occurrence of such event deemed the termination of the franchise to be reasonable.

**2)  Whether altering the gasoline payment terms pursuant to the Agreement constitutes a breach of the covenant of "good faith and fair dealing."**

a.  Sunoco's Position

Under Massachusetts law, the implied covenant of good faith and fair dealing ensures that parties act in good faith and that neither party does "anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Druker v. Roland WM. Jutras Assocs., Inc.*, 370 Mass. 383, 385 (Mass. 1976) (quoting *Uproar Co. v. National Broadcasting Co.,* 81 F.2d 373, 377 (1st Cir. 1936)).  However, the implied covenant of good faith and fair dealing does not create rights or duties beyond those the parties agreed to when they entered into the contract.  *See Ayash v. Dana-Farber Cancer Inst.*, 443 Mass. 367, 385 (Mass. 2005).

In this case, the Agreement provided that Sunoco may alter the terms of payment with notice:

**2.03 TERMS OF PAYMENT**

a.   Dealer shall pay for all products purchased and all other fees and sums due to Company in a manner determined by Company from time to time in accordance with Company's standard credit practices.

b.   All credit terms and methods of payment shall be deemed a part of this Franchise, and such terms and methods may be amended or terminated at any time by Company, upon notification to Dealer.  Company may suspend deliveries of products to Dealer if Dealer does not comply with Company's credit terms and methods of payment.  The right to amend and change credit terms and method of payment, and suspend deliveries of products to Dealer, shall be in addition to, and not in substitution for, other rights and remedies available to Company.

…

Further, Federal Courts have held terms of franchise agreements falling under the auspice of the PMPA valid even in cases where the agreement grants the franchisor some level of discretion in choosing how the franchisee is to engage in certain conduct. *See Talbert-Siebert Ent., Inc. v. Shell Oil Co.*, 1992 U.S. Dist. LEXIS 8033, *11-*12 (D. La. 1992) (holding that a clause in a franchise agreement allowing the franchisor to designate the method of payment for gasoline deliveries was valid, despite possibly creating an onerous result). In the instant case, the plain language of the Agreement granted the franchisor the power to set the terms of payment, implying that such terms could be altered during the tenure of the Agreement. Thus, Mr. Cheng's contention that such a change would be a violation of the covenant of good faith and fair dealing is without legal support.

3) **Whether altering the gasoline payment terms pursuant to the Agreement constitutes an unfair and deceptive business practice.**

The Massachusetts' courts have looked to the Federal Trade Commission for guidance with respect to what constitutes "unfair" practices in analyzing claims under M.G.L. c. 93A. Specifically, the Courts look to: "(1) whether the practice . . . is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen)." *PMP Associates, Inc. v. Globe Newspaper Co.,* 366 Mass. 593, 596 (Mass. 1975). In the instant case, Mr. Cheng's change in gasoline payment terms in a manner consistent with the plain language of the Agreement is hardly within the "penumbra" of some common-law, statutory, or other established concept of "unfairness." Further, Mr. Cheng is a businessman who had experience with Sunoco's billing practices during

his operation/ownership of the Worcester Station and the Natick Franchise.  In that regard, he cannot in good faith now argue that Sunoco's conduct was "immoral, unethical, oppressive, or unscrupulous."  Finally, such conduct would not result in substantial injury considering Mr. Cheng contracted for the franchise with the provisions included in the Agreement (and could have voiced objection if he did not like the terms at the time of execution).

**4)  Whether irrelevant and prejudicial evidence should be admitted at trial.**

Upon belief, Mr. Cheng intends to try to offer irrelevant and prejudicial material at trial in this matter.  There existed a small convenience store onsite which sold sundries, beverages, and other miscellaneous items.  When Mr. Cheng obtained the franchise from Sunoco, he purchased (from Sunoco) the stock on the premises (sodas, food products, etc.) which were on location at that time.  Mr. Cheng now claims that items were outdated and/or past expiration, and wants to introduce this evidence at trial.  However, such evidence is outside the scope of the complaint and outside the scope of this case.

Rule 402 of the Federal Rules of Evidence provides that "[a]ll relevant evidence is admissible" and that "[e]vidence which is not relevant is not admissible."  Fed. R. Evid. R. 402.  Further, Rule 403 of the Federal Rules of Evidence provides that "…evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. R. 403.  In this case, the inventory purchased – regardless of whether it was outdated (which it was not) – has no bearing on whether Sunoco's change in the credit arrangemetn is a violation of the covenant of good faith and fair dealing or an unfair and deceptive business practice (as alleged in the Complaint).  In fact, the complaint is devoid of any mention of the inventory issues.

5) **Whether a party can sue for claims sounding in breach of contract when the contract in question was procured by fraud on account of the party attempting to sue.**

Courts have held that fraud can serve as both a basis for tort liability <u>and</u> as <u>grounds</u> <u>for</u> <u>rescinding</u> <u>contracts</u>. *See Kenda Corp, Inc. v. Pot O'Gold Money Leagues, Inc.*, 329 F.3d 216, 224 (1st Cir. 2003) (holding that "[f]raud in the inducement can serve as both a basis for tort liability….and as grounds for rescinding a contract.") (citing Massachusetts law).  The test to be applied when determining if a contract should be deemed unenforceable is the same as that which is applied to the tort of deceit.  *Id*.  Mr. Cheng should not be permitted to seek damages under a theory based on a contract which can be rescinded (and should be rescinded) due to fraud in the inducement of that same contract.

(b)     Cheng's Position

Cheng relies on his memorandum of law submitted in opposition to Sunoco's Motion for Summary Judgment to address the various questions of law that may arise.

VII.   **AMENDMENTS TO PLEADINGS**

Sunoco seeks to amend its Amended Verified Counterclaim to include counts for damages associated with Mr. Cheng's unfair and deceptive business practices, pursuant to M.G.L. c. 93A §11, through his conduct in obtaining the franchise.  The evidence deduced through discovery and presented in the affidavit signed by Mr. Cheng which was submitted as an exhibit to his Opposition to Sunoco's Motion for Summary Judgment clearly shows that he willfully and willingly attempted to mislead Sunoco.

## VIII.   ADDITIONAL MATTERS TO AID IN DISPOSITION

None known – the parties have had settlement discussions without success.


## IX.   TRIAL INFORMATION

This case is a jury trial and Sunoco anticipates the case to last 4 (four) trial days.

Cheng anticipates the case will last 3 (three) trial days.


## X.   WITNESSES

Samuel Cheng
2421 Cranberry Highway, Unit 420, Wareham, MA 02571
Factual testimony

Chin Cheng
2421 Cranberry Highway, Unit 420, Wareham, MA 02571
Factual testimony

Judy Wallace
5 Gold Nugget Rd.
Spencer, MA 01562
Factual testimony

Robert Beckershoff
c/o Sunoco, Inc. (R&M)
1735 Market Street, Suite LL
Philadelphia, PA 19103
Factual Testimony

The parties reserves the right to amend this witness list, to call as a witness any individual identified by the other party as a potential witness, and to call other witnesses which may be necessary for impeachment and/or rebuttal.

XI.     **EXHIBITS**

    A.  Franchise Application

    B.  Franchise Agreement

    C.  Notice of Termination of Franchise

    D.  Account information

    E.  Judgment from Natick District Court, *Sunoco, Inc. (R&M) v. Cheng*, 200587SU000028.


| | |
|---|---|
| SAMUEL CHENG | SUNOCO, INC. (R&M) |
| By His Attorney: | By its Attorney: |
| | |
|  /s/ Nathaniel D. Pitnof |  /s/ Michael E. Levinson |
| Nathaniel D. Pitnof, Esq. BBO# 400660 | Michael E. Levinson, Esq. BBO# 666108 |
| 100 Grove Street, Suite 311 | John B. Reilly, Esq. BBO# 545576 |
| Worcester, MA 01605 | John Reilly & Associates |
| Tel: (508) 757-3000 | 100 North Main Street, 4th Floor |
| Fax: (508) 797-4114 | Providence, RI 02903 |
| | Tel: (401) 272-2800 |
| | Fax: (401) 272-2811 |

<u>**CERTIFICATE OF SERVICE**</u>

It is hereby certified that on the **16**th day of **February, 2011**, a true copy of the within was filed electronically and it is available for viewing and downloading from the ECF system. The following counsel of record will receive notice of the filing of this document electronically from the United States District Court for the District of Massachusetts:

**Nathaniel D. Pitnof, Esq.**
100 Grove Street, Suite 311
Worcester, Massachusetts 01605

/s/ Michael E. Levinson, Esq.
Michael E. Levinson, Esq.